**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

---

| | |
|---|---|
| NATASHA NETTLES MANNING  AND : | |
| ARTIES LEE MANNING, JR., : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| v. : | |
| : | **CIVIL ACTION** |
| NEW ORLEANS POLICE CHIEF : | |
| MICHAEL HARRISON, OF THE NEW : | **NO. _____** |
| ORLEANS POLICE DEPARTMENT BOTH IN : | |
| HIS INDIVIDUAL AND OFFICIAL CAPACITY, : | **JUDGE:** |
| THE CITY OF NEW ORLEANS THROUGH ITS : | |
| MAYOR MITCHELL LANDRIEU IN HIS : | |
| OFFICIAL CAPACITY, POLICE OFFICER : | **MAGISTRATE:** |
| TERRANCE HILLIARD, BOTH INDIVIDUALLY: | |
| AND IN HIS OFFICIAL CAPACITY, : | |
| OFFICER CEDRIC DAVILLIER, BOTH : | |
| INDIVIDUALLYAND IN HIS OFFICIAL : | |
| CAPACITY, OFFICER RYAN ROUSSEVE, : | |
| BOTH INDIVIDUALLY AND IN : | |
| HIS OFFICIAL CAPACITY, OFFICER : | |
| CHARLES HOFFAKER, AS THE SUPERVISOR : | |
| OF THE N.O.P.D. TIGER UNIT, BOTH : | |
| INDIVIDUALLY AND IN HIS OFFICIAL : | **JURY TRIAL DEMANDED** |
| CAPACITY, AND LIEUTENANT CHRISTIAN : | |
| HART, BOTH INDIVIDUALLY AND IN HIS : | |
| OFFICIAL CAPACITY : | |
| : | |
| **Defendants,** : | |

---

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes **Plaintiffs Natasha Manning and Arties Lee Manning, Jr., parents of their son, the deceased Arties Lee Manning, III,** who was shot and killed by defendant New Orleans Police Officer Terrance

Hilliard on January 24, 2017, by New Orleans Police Officers in the City of New Orleans Parish of Orleans, who respectfully state as follows:

<u>PRELIMINARY STATEMENT</u>

1.  This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the actions of Defendants New Orleans Police Chief Michael Harrison, of the New Orleans Police Department in both his individual and official capacity, the City of New Orleans through its Mayor, Mitchell Landrieu, in his official capacity, Police Officer Terrance Hilliard, both individually and in his official capacity, Officer Cedric Davillier, both individually and in his official capacity, Officer Ryan Rousseve, both individually and in his official capacity, Officer Charles Hoffaker, both individually and in his official capacity, and Lieutenant Christian Hart, both individually and in his official capacity in failing to train, failing to comply with a federal consent order, failing to supervise, using excessive force to shoot Arties Lee Manning, III, in the rear shoulder and back three times while Arties Lee Manning, III, was running from plainclothes defendant officers who failed to identify themselves and approached Arties Lee Manning, III, with drawn weapons, with no visible identification of their capacity as officers, who further did not verbally identify themselves as officers to decedent Arties Lee Manning, III while carrying out a botched surveillance operation of the New Orleans Police Department Tiger Unit. The defendant Tiger Unit officers intended mission was simply do surveillance to find and to arrest Harry Palmore, a robbery suspect, who had nothing to do with decedent Arties Lee Manning, III.  Arties Lee Manning, III did not commit any crimes with Harry Palmore but, was an innocent citizen bystander at the site of the botched surveillance of Tiger Unit and the surveillance and arrest of Harry Palmore. The suspect, Harry Palmore, a known

robber, was located exactly where the apartment in the Carriage Apartments where the Tiger

Unit defendants were told by surveillance team police members, previously who got accurate

information from informants who were stopped driving the car Harry Palmore stole and used

in several robberies. Harry Palmore was known by the Tiger Team defendants to be in a

specific apartment at The Carriage House Apartments, Unit C64, at Curran Boulevard in

New Orleans, Louisiana. Due to the Defendant's joint negligence, lack of proper planning,

lack of proper policies, and due to all the supervisory and other officers in multiple violations

of defendants own police procedures and known standards of law enforcement, decedent

Arties Lee Manning, III was shot and fatally wounded. Officer Terrance Hilliard, and other

officers in were not in uniforms and were making contact with the public in plainclothes,

such as Officer Cedric Davillier (who at the last minute covered up his uniform with a

hooded sweatshirt), approached decedent Arties Lee Manning, III without any visible

identification of their capacity as police officers, without ever identifying themselves to

decedent as officers, and with their .40 caliber Glock semi-automatic weapons drawn,

entered in the Carriage House Apartments' public courtyard and approached Arties Lee

Manning, III. Residents often gather and pass through said public courtyard to access their

apartments, which is adjacent to children and teachers attending the Dolores T. Aaron

Academy elementary school and in the apartment playground for child residents of the

Carriage House Apartments (Exhibit P-3 photo). In the public courtyard of the shooting

scene, Officer Terrance Hilliard shot and killed Arties Lee Manning, III three times in the

rear shoulder and back, as Arties Lee Manning, III ran from defendant plainclothes police

officers who had their Glock guns pointing at Arties Lee Manning, III and were unidentified

plainclothes  armed police officers with weapons in their hands not in uniform. (See Exhibit

P-1 coroner's diagram of bullet hole wounds in Arties Lee Manning, III *attached*). Arties Lee Manning, III perceived danger from the plainclothes armed gunman that approached him and tried to grab him.  None of the defendant officers were wearing body cameras on their person, as required by N.O.P.D. Operations Manual Chapter 41.3.10, including Officer Cedric Davillier who in an unplanned move due to the risky negligently "thin" understaffed surveillance operation, covered up his uniform with a hooded sweatshirt in violation of N.O.P.D. policies.  Plain clothes officers approached with guns drawn Arties Lee Manning, III in violation of existing N.O.P.D. Operational Manual policies, causing Arties Lee Manning, III to fear death and  run in the high-crime area, as he was reasonably in fear for his life by the unidentifiable police officer defendants who did not orally identify themselves as police officer causing Arties Lee Manning, III, to be shot by Tiger Team member police officer Terrance Hilliard and due to defendants' joint negligence. Defendants, including Police Chief Michael Harrison who appeared in press interviews and proceeded to issue false defamatory information to the public, including knowingly false information that Arties Lee Manning, III was a criminal accomplice of actual robbery suspect Harry Palmore, that Arties Lee Manning, III was also a criminal suspect in the robberies committed by Harry Palmore, and that Arties Lee Manning, III knew Harry Palmore and was the "second suspect". (Exhibit P-2, *attached*) This caused mental anguish, embarrassment and humiliation to both of his grieving parents/plaintiffs. Previous surveillance of the Tiger Unit had not obtained <u>any</u> information that this was true and thus Chief of Police Michael Harrison knew this was defamatory per se and false and made false statements to cover up the Tiger Unit botched surveillance operation that resulted in the death of a non-suspect Arties Lee Manning, III, who the defendants knew from its previous surveillance and intelligence, had not committed

any crimes nor committed any crimes with Harry Palomar. Chief of Police Michael Harrison

also made false statements that it was not practical for the officers to wear uniforms or body

cameras for this particular  botched operation and all N.O.P.D. Operational Manual rules

were complied with when the internal investigation of N.O.P.D. officers found violations,

(see Exhibit P-2, *attached of Chief Harrison's statement "the officer was in plainclothes and

could not wear a camera"*), to cover up the botched surveillance operation of the Tiger Unit

police officers that resulted in the death of Arties Lee Manning, III.  In fact, Chief of Police

Michael Harrison knew that it was a violation of N.O.P.D. policy for the officers to carry out

the botched surveillance operation by armed plainclothes officers making contact with the

public without body cameras. (See Exhibit P-6, NOPD body camera policy) A subsequent

investigation of this incident concluded that re-training of officers in the use of body cameras

was necessary due to violations of defendant's own N.O.P.D. Operational Manual policies

and required by the Federal Consent Order. The defendants also issued false statements that

Arties Lee Manning, III took out a pistol that was holstered in his pants and aimed said pistol

at officers, despite forensic tests demonstrating that no fingerprints of Arties Lee Manning III

were on his weapon, nor gun powder residue and Artis Lee Manning III did have a pistol in

his hand but said pistol was in a holster at all times. Instead, decedent Arties Lee Manning,

III had his cell phone in one hand and his keys in his other hand. The pistol was a stolen

pistol, which Arties Lee Manning III carried for protection for living in a high-crime area in

question was found still in its holster after  his body hit the mud in the courtyard. Other false

statements were made by defendants, as discussed herein, in an attempt to cover up the

botched surveillance operation that endangered children on the apartment complex's

playground, the nearby residents of the apartment complex in the public courtyard and on the

balconies overlooking the courtyard, the adjacent elementary school that was not placed on lockdown in preparation for this operation, and other officers who could have been seriously injured or killed by stray bullets of other untrained Tiger Unit members police officers who failed to properly plan and implement a simple surveillance operation and arrest of Harry Palomar a known robbery suspect in his known apartment location. The actions of the joint defendant officers are the result of a defective policy, practices, negligent training and customs as well as deliberate indifference on the part of the defendant officers, the defendant supervisors of the City of New Orleans Police Department.

2. Defendants, including Charles Hoffaker and Lieutenant Christian Hart, TIGER Unit supervisors, were negligent in their acts of participation in the botched surveillance operation due to lack of planning, lack of training, failure to follow policies and procedures of the New Orleans Police Department, and the defendant officers' personal acts of negligent planning, "thin" staffing and negligent supervision of this operation that resulted in the death of Arties Lee Manning, III. The poorly planned, poorly implemented, poorly manned, botched surveillance police operation needlessly endangered the lives of nearby school children, children on the apartment complex's playground, residents of the apartment complex, and other participating police officers who were not properly trained and briefed in conducting this botched surveillance operation. No action was taken by defendants to correct these negligent actions due to the systems failures of the police department and it will happen again to other innocent citizens in the future.

## JURISDICTION

3. Petitioner brings this action in this Court pursuant to 28 U.S.C. § 1391(b), as the transactional events constituting the alleged tortious behavior arose and occurred within

Orleans Parish, and in conformity with Fed. Rule. Civ. P. Art 4(d); the cause is further

grounded in 28 U.S.C. § 1331 *et seq.* and 1343(a)(3), 1343(a)(4), and 1367(a) as this suit

raises questions of federal civil rights law and is also brought pursuant to 42 U.S.C. § 1983 *et*

*seq.* and related provisions. This action is authorized by 42 U.S.C. §1981, *et seq.*, especially

§1983, to redress the deprivation under color of law, statute, ordinance, regulation, custom,

and/or usage of rights guaranteed the Plaintiffs by the First, Fourth, and Fourteenth

Amendments to the United States Constitution. Petitioners also seek all relief afforded under

state law and including La. Civil Code Articles 2315, 2315.1, 2315.2, wrongful death,

survival actions and the defamation by Police Chief Michael Harrison in public media of

decedent Arties Lee Manning, III.

## PARTIES

4.  Plaintiff, **Natasha Nettles Manning**, is the mother of decedent Arties Lee Manning, III and was at all times a resident of the Parish of Jefferson, State of Louisiana.

5.  Plaintiff, **Arties Lee Manning**, **Jr.** is the father of decedent Arties Lee Manning, III and was at all times a resident of Temple, Texas.

6.  Defendant, **New Orleans Police Chief Michael Harrison**, of the New Orleans Police Department, in his individual and official capacity domiciled in New Orleans.

7.  Defendant, **City of New Orleans,** is a municipality organized under the laws of the State of Louisiana with capacity to sue and be sued. Defendant City of New Orleans and its agency the New Orleans Police Department is a municipality which owns, operates, manages, directs, and controls the New Orleans Police Department which employs Mayor Mitch Landrieu, Police Officers Terrance Hilliard, Cedric Davillier, Ryan Rousse, and Lieutenant Christian Hart.

8. Defendant, **Honorable Mitchell Landrieu**, is a person of the full age of majority, a resident of Orleans Parish, and is the current Mayor of the City of New Orleans

9. Defendant, **Police Officer Terrance Hilliard**, both individually and in his official capacity, as the shooter of decedent Arties Lee Manning, III, who personally participated in the botched surveillance operation, shot decedent Arties Lee Manning, III, failed to identify himself as a police officer while dressed in plainclothes, failed to properly follow police procedures and known standards of law enforcement, and failed to properly execute the botched surveillance operation.

10. Defendant, **Police Officer Cedric Davillier**, both individually and in his official capacity, who personally participated in the botched surveillance operation and failed to properly follow police procedures, including the covering of his uniform and identification as a police officer with a hooded sweatshirt, not properly briefed, nor trained, and failed to properly execute the botched surveillance operation.

11. Defendant, **Police Officer Ryan Rousse**, both individually and in his official capacity, who personally participated in the botched surveillance operation, failed to properly follow police procedures, failed to properly identify himself, was improperly trained, and failed to safely execute the botched surveillance operation of defendant police officers.

12. Defendant, **Police Officer Charles Hoffaker**, both individually and in his official capacity, as the supervisor of the TIGER Unit that was on the scene at the time of the incident, who was a supervisor of the botched surveillance operation, and failed to properly plan said operation, failed to properly brief participating officers, failed to notify other non-TIGER team members and  failed to notify N.O.P.D. 7th District Police or to fully brief N.O.P.D. 7th District Police in New Orleans East,  failed to notify the Seventh District NOPD before

commencing the botched surveillance operation, failed to properly train, failed to properly supervise other defendant officers involved in the botched surveillance operation, and proceeded with the botched surveillance operation with  police officers without body cameras. The  N.O.P.D.'s own  investigative report after the fact listed as "thin" or, in other words,  there were a shortage of police  officers that were properly trained for the botched surveillance operation,  yet the defendant supervisors and defendant officers proceeded with the botched surveillance operation resulting in the death of a non-suspect, Arties Lee Manning, III, thus endangering nearby school children, children of residents of the apartment complex, residents of the apartment complex, and participating officers who were neither properly briefed nor  properly equipped.

13. Defendant, **Lieutenant Christian Hart**, both individually and in his official capacity, as the supervisor of the TIGER unit that was on the scene at the time of the incident, who was a supervisor of the botched surveillance operation, and failed to properly plan said operation, failed to properly brief participating officers, failed to notify other non-TIGER Unit team members of N.O.P.D. and failed to fully brief them, failed to notify the Seventh District NOPD before commencing the botched surveillance operation, failed to properly train, failed to properly supervise other defendant officers involved in the botched surveillance operation, and proceeded with the botched surveillance operation with officers without body cameras, and with N.O.P.D.'s own report after the fact listed as "thin" or, in other words, insufficient officers that were properly trained yet proceeded with the botched surveillance operation resulting in the death of a non-suspect, Arties Lee Manning, III, thus endangering nearby school children, children of residents of the apartment complex, residents of the apartment complex, and participating officers who were neither properly briefed nor equipped.

14. At all times, all Defendants acted in concert and conspiracy and were jointly and *insolido* liable and responsible for the harms caused to Plaintiffs by the fatal shooting of their son.

15. At all times relevant to this complaint, all defendants acted under color of state law.

16. All defendants are joint tortfeasors and liable for its employees acting in the course and scope of their employment with the City of New Orleans and its agency namely, the New Orleans Police Department

## FACTUAL ALLEGATIONS

17. On January 24, 2017, N.O.P.D. officers were conducting a surveillance operation of the Carriage House Apartment, in order to arrest robbery suspect Harry Palmore. Palmore had driven a silver Nissan when carrying out the robbery, which was found in the parking lot of the Carriage House Apartments. Upon conducting a VIN number inquiry, the officers learned that the silver Nissan was stolen from the 1st Police District on October 5, 2016. Detective Mullaly, an officer of the TIGER team, arrived on scene to assist in the investigation and began to interview Melissa Maxwell, who advised that the silver Nissan was Harry Palmore's vehicle. Also in the interview with Melissa Maxwell, police learned that suspect Harry Palmore resided in apartment C64 of the Carriage House Apartments complex. Upon arrival to the complex and within minutes of visually scanning the area, Officer Hilliard was able to locate suspect Harry Palmore sitting on the second-floor balcony near apartment C64. This is of significant importance because it demonstrates that the defendants knew where suspect Harry Palmore was at all times during this operation.

18. Arties Lee Manning, III had gotten a job as a parking lot manager and was living in his own apartment in New Orleans East, at the Carriage House Apartments located at 10151 Curran Boulevard, in New Orleans, Louisiana. Arties Lee Manning, III was hungry and walked over

to an adjacent apartment where a resident was making chicken wings in one of the apartments for five dollars. Arties Lee Manning, III was told that the food would take a few minutes before it was ready, and to come back then. Arties Lee Manning, III walked downstairs and texted with his cell phone as he walked with his cellphone and keys. Arties Lee Manning, III never got his chicken wings as he was shot by Officer Terrance Hilliard a member of the Tiger Unit doing surveillance at the Carriage House apartments for Harry Palomar robber.

19. Arties Lee Manning, III did not know that New Orleans Police Department elite and "highly trained" TIGER Unit police unit defendants had the complex under surveillance for a known robber Harry Palmore, whom the TIGER unit came to arrest Harry Palomar in apartment C64. The defendant officers of the TIGER unit approached the Carriage House Apartment complex in "cool cars" (i.e. unmarked pickup trucks and unmarked cars) and were not in uniform with any police identification on their clothing to conduct the botched surveillance operation. The TIGER Unit secured the two stairs leading to the unit C64 where Harry Palmore was present to prevent his escape during the arrest.

20. There was little planning prior to this execution of the botched surveillance of Harry Palomar. The operation was termed as a "thin" operation, meaning that the botched surveillance operation was short on manpower and was staffed by an under-equipped team to safely secure the area for the arrest in a crowded, dense apartment complex next to a children's playground and adjacent to an elementary school. Uniformed officers were supposed to be the only ones to interact with residents so the citizens knew they were police officers and not a threat to the citizens safety. Instead, the uniformed Officer Cedric Davillier improvised at the last moment and donned a hooded sweatshirt to hide his uniform and

identification. Other officer defendants, including Officer Terrance Hilliard and Lieutenant

Christian Hart, supervisor of the TIGER unit, were all in plainclothes with .40 caliber Glock

15 shot semi-automatic pistols drawn and shouting commands but never identifying

themselves to residents a police including decedent Arties Lee Manning, III, whom the

defendants approached, attempted to grab him, causing  Arties Lee Manning, III to run away

from them in  his reasonable perceived fear of being harmed by unidentifiable persons with

guns drawn an pointed at him. New Orleans East is known for high crime rates. Arties Lee

Manning had a pistol in a holster inside his pants for personal protection, his cell phone in his

right hand, and his keys in his left hand.

21. Arties Lee Manning, III ran away when plainclothes officers approached him with drawn

weapons and tried to grab him from behind. It was a violation of N.O.P.D. policy to draw a

weapon on a civilian with no probable cause to believe Arties Lee Manning, III committed

any crime, and had no connection to Harry Palomar nor to their purported mission to do

surveillance on Harry Palomar and without identifying themselves as police officers. Further,

the officers were not wearing body cameras on their person, in violation of N.O.P.D.

Operations manual policy. Officer Terrance Hilliard gave chase, passing the Carriage House

apartments children's playground and rounding a corner at the laundry room. (See Exhibit P-

3, *attached*). The officers did not shout "Police!" or, "Stop, police!". Officers testified in later

statements they only heard other words including "No, No, No". Officer Terrance Hilliard

shot Arties Lee Manning, III three times in the rear shoulder and back, causing him to fall to

the mud with his cell phone in one hand and car keys in the other. Arties Lee Manning, III

fell and suffered as he bleeds to death on the mud with his cell phone in his hand, bloody

keys in the other hand and his pistol still in its holster. Forensic tests show no fingerprints of

Arties Lee Manning, III on the pistol that was in the holster later found in Arties Lee
Manning, III's pants.  Arties Lee Manning III never fired his pistol and could not as it
remained in his holster. The only shell casings recovered at the scene were .40 caliber
casings from Officer Hilliard's Glock who fired three rounds into Arties Lee Manning, III
rear shoulder and back.  (Exhibit P-1) No shell casings from decedent Arties Lee Manning,
II's 9-millimeter pistol were found to have been fired.

22. Officer Terrance Hilliard would make false statements that Arties Lee Manning, III ran and
pointed the gun at officers, when in fact the pistol was always in its holster inside of Arties
Lee Manning, III's pants.

23. Officer Terrance Hilliard had previously shot at and missed a suspect who he mistakenly
thought had a pistol but did not, according to the personnel file of Officer Hilliard. (Exhibit
P-5, *attached*). It is noteworthy that N.O.P.D lost all personnel files for all defendant officers
prior to hurricane Katrina. Thus, all N.O.P.D. personnel records only exist from Feb 17, 2012
to present. Officer Terrance Hilliard was investigated for five serious offense internal affair
complaints between February 17, 2012 to present and all were not sustained. (Exhibit P-5)
Officer Terrance Hilliard was found not to have violated any criminal laws or N.O.P.D.
policies or standard of law enforcement.

24.  N.O.P.D. has a custom and practice of not reprimanding, disciplining, re-training police
officers who violated police standards and procedures. Officer Terrance Hilliard had several
internal affairs complaints filed against him but he was cleared of all complaints and was
never disciplined or re-trained.

25. None of the participating officers ever verbally or visually identified themselves as police
officers in violation of policies and procedures and know standards of law enforcement.

26. Officer Cedric Davillier failed to equip himself with a body camera, due allegedly to time constraints in executing the botched surveillance of Harry Palmore, prior to participating in the intended take-down of Harry Palmore, in violation of N.O.P.D. Chapter 41.2.10 regarding the use of Body Worn Cameras. In Sergeant David Barnes' report, he cites Officer Davillier's transition from a member of the surveillance team to a member of the takedown team as problematic and unnecessary, unless "some exigent circumstance existed". (Exhibit P-7, Barnes' report, *attached*).

27. In order to cover up the mistaken and grossly negligent shooting of Arties Lee Manning, III, the defendants conspired to cover up their joint negligence.

28. Defendants also failed to properly investigate and talk to adverse witnesses but defendants chose to disclose to the media it had interviewed a false, unreliable witness, Georgia Mae Taylor, (aka Sneed and other aliases over the years including the names "Jampierre", "Sneed", "Jones", "Burns" and others), who was obviously a heavy drinker, probably an alcoholic, was reported in the Times-Picayune newspaper to have been arrested for murder in connection with a 1971 New Orleans Homicide, and was convicted and given a 10 year sentence at St. Gabriel and under the alias "GB" she has a 1985 felony NOPD arrest for possession stolen things and other charges, also had under alias "GB' a 1987 Worthless Check charges in St. Bernard Parish and had other arrest(s) for theft under her alias names. Yet defendants failed to interview other witnesses at the scene of the shooting who observed Arties Lee Manning, III, never took his pistol out his holster, never aimed his holstered pistol at anyone and the defendant officers never identified themselves and Terrance Hilliard shot Artise Lee Manning, III without cause.

29. Defendants also took only preserved and produced one of the body cameras video of all the police officers near the shooting which is highly distorted and does not show Artise Lee Manning, III, with a unholstered pistol in his hand nor does it show Artise Lee Manning, III pointing his unholstered pistol at anyone at any time in said video Exhibit P-8 attached hereto. According to its own records of investigation the N.O.P.D. was unable to further enhance the video in a desperate attempt to hide the wrongful shooting by Tiger Unit police officer Terrance Hilliard to find video footage showing a unholstered pistol in Artise Lee Manning, III's hand.

30. The Defendants then had the video sent to another entity that altered and edited to show red circles to falsely state at media press conferences that there is a pistol shown in Artise Lee Manning, III's hand and defendants altered the speed of the video of highly distorted video images. The video attached P-8 in fact fails to show a pistol or holstered pistol or unholstered pistol in the hand of Artise Lee Manning, III.

31. There is no audio on the video until the very end and the audio is missing.

32. Petitioners have been unable to obtain any other video despite repeated Louisiana Public record act requests thru plaintiff's attorneys to produce other Tiger Unit and supporting police officers video on the date of the wrongful death of Artise Lee Manning, III>

33. Special teams of officers such as the TIGER Unit are required for citizens safety, to be specially trained and only operate under strict standards of law enforcement or serious injury or death may occur to its own police officers and innocent citizens. Every citizen in the apartment complex and adjacent school children and teachers in the community of N.O. East

were needlessly endangered by the gunshots fired by defendants in crowded dense areas of citizen residents.

## CAUSES OF ACTION

### Count I
### Federal Constitutional Claims

34. The actions of all Defendants, named herein, violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the unlawful use of force.

### Count II
### Federal Constitutional Claims

35. The violations of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiffs' damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of the Defendant City of New Orleans and its officer/employees, which has tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, and discipline in the areas of:

   a. The use of excess force by police officers;

   b. The proper exercise of police powers, including but not limited to the making of an arrest and the use of force;

   c. The monitoring and disciplining of officer misconduct;

   d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

16

e.   Police officers use of their status as police officers to employ the use of force;

f.   The failure of police officers to follow established policies, procedures, directives, and instructions regarding arrests and the use of force under such circumstances as presented by this case, laid out above.

g.   The culture and customs, practices and insufficient screening, supervision and inadequate training of N.O.P.D. police officers of the N.O.P.D. has been so intolerable and deficient,  that the City of New Orleans voluntarily entered into a Federal Consent order to force needed reforms to  change its police departments unsafe and unconstitutional policies, procedures,  customs lack of monitoring of officers, lack of initial, remedial and recurrent training that resulted in numerous civil right violations of citizens by N.O.P.D. officers. The N.O.P.D. is still in need of monitoring and operating to make much needed reforms as required under that Federal Consent Order.

## Count III
## State Law Claims

36. The actions of defendant officers named herein constitute the torts of negligence, assault and battery for shooting Arties Lee Manning, III and his plaintiff parents bring wrongful death and survival actions for defendants killing their son Arties Lee Manning, III, who they had a close relationship without cause, under the laws of the State of Louisiana. The actions of Defendant Chief of Police Michael Harrison constitute the tort of defamation under the laws of the State of Louisiana including Louisiana Civil Code Articles 2315, 2315.1, 2315.2, wrongful death, survival actions and the defamation by Police Chief Michael Harrison in public media of decedent Arties Lee Manning, III false per se defamation as a robber and accomplice of Harry Palomar, who confessed to the robberies and did not have any

relationship with decedent and plaintiffs being causes of action under state law and including La. Civil Code Articles 2315, 2315.1, 2315.2, wrongful death, survival actions and the defamation by Police Chief Michael Harrison in public media of decedent Arties Lee Manning, III.

37. Plaintiff hereby demands a jury trial on all issues of fact and law.

Plaintiffs the natural father and mother of decedent Arties Lee Manning, III, had a close relationship with their son Arties Lee Manning, III and lost the benefits of his future comfort, affection, moral support and itemize their damages as follows:

Natasha Nettles Manning, mother of decedent Arties Lee Manning III's damages are as follows:

Loss of past and future love and affection

Past mental anguish

Future mental anguish

Loss of past and future spiritual and emotional support

Wrongful death of her son

Survival action of her son

Humiliation

Per se defamation of her son falsely calling him a criminal accomplice of Harry Palomar by defendants

Assault and battery of her son by the wrongful shooting by Police Officer Terrance Hilliard and negligence of defendants

Punitive damages against all defendant police officers sued in their individual capacities

Costs

Attorney fees

38. Arties Lee Manning, Jr., father of decedent Arties Lee Manning III's damages are as follows:

Loss of past and future love and affection

Past mental anguish

Future mental anguish

Loss of past and future spiritual and emotional support

Wrongful death of his son

Survival action of his son

Humiliation

Per se defamation of his son falsely calling him a criminal accomplice of Harry Palomar by defendants

Assault and battery of his son by the wrongful shooting by Police Officer Terrance Hilliard and negligence of defendants

Punitive damages against all defendant police officers sued in their individual capacities

Costs

Attorney fees

**Wherefore**, Plaintiffs respectfully request after due proceeding had judgment for damages as are reasonable in the premises including compensatory damages as to all defendants, punitive damages from Defendant police officers in their individual capacity plus, reasonable attorney's

fees, costs and judicial interest as to all defendants, and such other and further equitable relief as the Court and jury may appear just and appropriate.

*S Glenn C. McGovern*

**Glenn C. McGovern, Attorney for Plaintiffs**
(La. Bar 9321)
Natasha Nettles Manning and Arties Lee Manning, Jr.
Mailing address:
P.O. Box 516
Metairie, La. 70004
2637 Edenborn Ave., Suite 101
Metairie, La. 70002
Ph. 504 456-3610
Fax 504-456-3611
Email: gcmcg@mac.com

## CLERK OF COURT, PLEASE ISSUE SUMMONS TO:

1. **New Orleans Police Chief Michael Harrison**
   New Orleans Police Department
   715 South Broad St
   New Orleans, LA 70119

2. **The City of New Orleans thru it chief executive officer, the Mayor**
   **Of the City of New Orleans Mayor Mitchell J. Landrieu**
   Mayor's Office
   1300 Perdido St
   2nd Floor
   New Orleans, LA 70112

3. **Police Officer Terrance Hilliard**
   New Orleans Police Department
   715 South Broad St
   New Orleans, LA 70119

4. **Police Officer Cedric Davillier**

New Orleans Police Department
715 South Broad St
New Orleans, LA 70119

5. **Police Officer Ryan Rousse**
New Orleans Police Department
715 South Broad St
New Orleans, LA 70119

6. **Police Officer Charles Hoffaker**
New Orleans Police Department
715 South Broad St
New Orleans, LA 70119

7. **Lieutenant Christian Hart**
New Orleans Police Department
715 South Broad St
New Orleans, LA 70119

8. **The City of New Orleans thru its chief executive officer**
**Mayor Mitchell J. Landrieu**
Mayor's Office
1300 Perdido St
2nd Floor
New Orleans, LA 70112